CANADA DRY BOTTLING CO. OF UTAH et al v. BOARD OF REVIEW, INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY.

No. 7389. Decided Nov. 6, 1950. (223 P. 2d 586)

(Rehearing denied March 20, 1951)

620

See 61 C. J., Taxation, Sec. 227. Rating for unemployment compensation contribution purposes where corporations succeeds to assets of partnerships, 109 A. L. R. 1327. See, also, 48 Am. Jur., 516.

*McCullough, Boyce & McCullough,* Salt Lake City, for plaintiffs.

*Clinton D. Vernon,* Attorney General, *Fred F. Dremann,* Salt Lake City, for defendants.

LATIMER, Justice.

Plaintiffs bring these matters before this court to review a decision of the Board of Review, Industrial Commission of Utah, Department of Employment Security. The decisions involved the interpretation of certain sections of the statute affecting "rating inheritance." The final orders entered denied to petitioners a right to reduced compensation ratings because of their not meeting the requirements of a "qualified employer" as defined by the statute. The cases were consolidated before the Department of Employment Security by agreement of the parties and are here under the same arrangement. We, therefore, dispose of both cases in this one decision.

The matter was decided on a stipulation of facts and those that are relevant to this decision are not in dispute. The facts of importance are these: Prior to December 29, 1939, R. Verne McCullough and members of his family operated three bowling alleys, two being located in Salt Lake City, Utah, and the third in Ogden City, Utah. These enterprises were operated under the assumed names of Temple Bowling Alley, Ritz Bowling Palace, and Ogden Bowling Center. Each of these enterprises was operated as a separate and independent venture in that separate records and bank accounts were maintained and each maintained its separate identity.

On the 2nd day of January, 1940, R. Verne McCullough, his wife, children and father entered into a general partnership arrangement which was designated and became known as the R. Verne McCullough Enterprises. The purposes of this partnership were to operate the bowling alleys previously referred to and to facilitate the preparation and filing of reports and forms and to fix each of the partners'

interest in the enterprises. Subsequent to the execution of the foregoing partnership agreement the three recreational enterprises continued to operate with the same management and under the same arrangement as previously existed.

On October 14, 1940, the partnership acquired another enterprise under the name and style of Canada Dry Bottling Company of Utah, which was engaged in the manufacturing, bottling and selling of soft drinks. This business was located in Salt Lake City, Utah, and like the others was operated as a separate and independent organization insofar as records, reports and identity were concerned, except that the profits from the various enterprises were transferred for the purpose of distribution through a single control account established in the control ledger of the McCullough partnership.

On or about July 1, 1947, two corporations were organized under the laws of this state which were designated and became identified as the McCullough Recreation Company and the Canada Dry Bottling Company of Utah. The former was organized to and acquired the assets of the three bowling alleys and the latter was organized to and acquired the assets of the bottling company. The stockholders of the two corporations were the partners to the partnership agreement and their relative interests in the corporations were the same as their interests in the partnership, that is, the number of shares of stock in the corporations held by each member of the family bore the same proportion to the total stock issued by the corporations as the individual interest of the partners bore to the total interest of the partnership. Upon transfer of the assets of the partnership to the two corporations, the R. Verne McCullough Enterprises commenced dissolution.

The partnership while it was operating the various enterprises apparently earned an experience rating of seven-tenths of one percent and the Department of Employment

Security fixed the unemployment compensation contribution at that rate for the partnership. The plaintiffs argue that this same rate was earned by each of the individual enterprises while the Department of Employment Security asserts that the rate was not broken down to the individual concerns but does not seriously contend that had the rate been figured for the individual enterprises the same rate would have been earned by each.

The two corporations paid to the Department of Employment Security certain sums to cover unemployment compensation contributions for the period from July 1 to September 30, 1947, based on the rate of seven-tenths of one percent. This rate was based on the experience rating of their claimed predecessor, R. Verne McCullough Enterprises. The Department of Employment Security held that the successor corporations did not meet the tests of the statute set up for inheritance rating, and accordingly, disallowed the reduced rate used by the corporations. The Department demanded that the corporations pay the two and seven-tenths percent rate required of businesses not entitled to experience ratings and the corporations paid the amounts involved under protest. They then commenced this action to recover for the sums so paid.

Our concern is to determine the legislative intent when it defined "employer" and "qualified employer" and when it prescribed that if an employer acquired all or substantially all of the assets of another employer and such other employer discontinued operations, the period of liability of both employers during such period should be jointly considered for the experience rating formula. In order to determine the legislative intent, it is necessary that we consider the several sections dealing with unemployment compensation.

Section 42—2a—19 (h), Laws of Utah 1947, c. 59, which became effective May 13, 1947, or some six weeks before

the plaintiff corporations were organized, defines employing unit as follows:

" 'Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, joint-stock company, insurance company, or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor of any of the foregoing, or the legal representative of a deceased person, which.has or subsequent to January 1, 1935, had one or more individuals performing services for it within this state.

"(1) *All individuals performing services within this state for any employing unit which maintains two or more separate establishments within this state shall be deemed to be performing services for a single employing unit for all the purposes of this act.*" (Emphasis added.)

Section 42—2a—7, Laws of Utah 1947, c. 56, which also became effective May 13, 1947, sets up a glossary for certon of the terms used and prescribes for the classification, rates, experience rating, and contributions to be made by employers. The sub-sections relevant to this decision are as follows:

"(C) 'Qualified employer' means any employer who: was an employer as defined in this act during each of the thirteen consecutive calendar quarters immediately preceding the computation date; and had employment in each of the three completed calendar years immediately preceding the computation date; and with respect to such three calendar years had filed all contribution reports prescribed by the Commission and (except for amounts due as determined pursuant to audit or as set forth on a notice of contribution deficiency prepared by the Commission and pertaining to the quarter ending December 31 immediately preceding the computation date) had paid all contributions thereon by the cut-off date. *If an employer has acquired all or substantially all the assets of another employer and such other employer had discontinued operations upon such acquisition, the period of liability of both employers during such period shall be jointly considered for all purposes of this section.*"

"(3) Each employer shall, except as provided in subsection (c) of this section, pay contributions equal to two and seven-tenths per cent of wages paid by him during the calendar years or parts thereof occuring after June 30, 1947, and prior to January 1, 1950.

"(4) Each employer shall, except as provided in subsection (d) of this section, pay contributions equal to two and seven-tenths per cent of the wages paid by him during each of the calendar years occurring after December 31, 1949."

"(2) The standard rate of contribution payable by each employer shall be two and seven-tenths per cent."

"(3) *No employer's rate shall be varied from two and seven-tenths per cent for any calendar year unless his experience-rating record has been chargeable with benefits throughout the thirty-six-consecutive-calendar-month period ending on the computation date, and with respect to such period he has filed all contribution reports prescribed by the Commission;* and (except for amounts due as determined pursuant to audit or as set forth on a notice of contribution deficiency prepared by the Commission and pertaining to the quarter ending on the computation date) he has paid all contributions thereon by the cutoff date; and unless each of his annual pay rolls, as defined herein, during the five-year period immediately preceding the computation date equals or exceeds ten per cent of his highest annual pay roll in such five-year period. An employer's record shall in no event be deemed to have been chargeable with benefits during any period prior to July 1, next succeeding the calendar year in which he first became an employer as defined in this act." (Emphasis added.)

The same section also provides for an employer's experience factor and a method for its determination. The employers are grouped into six classes and the contribution rate is determined by the class in which the employer is placed by a formula prescribed in the act.

Section 42—2a—19 (i) (1), Laws of Utah 1947, c. 59, defines employer in the following language:

"Any employing unit which paid wages during a calendar quarter for employment amounting to $140 or more."

From this definition it is established that for the purposes of this case employer and employing unit are synonymous.

The plaintiff Canada Dry Bottling Company of Utah, a corporation, argues that it inherited the experience rating of its predecessor in interest, R. Verne McCullough Enterprises, because it acquired all or substantially all of the assets of the venture previously and separately operated by the partnership under the name and style of Canada Dry Bottling Company of Utah, and the plaintiff McCullough Recreation Company, a corporation, argues that it inherited the same experience rating because it acquired

all or substantially all of the assets of the three bowling alley ventures operated by the partnership. The Commission, on the other hand, felt that prior to the creation of the two corporations there was only one employer (employing unit) and that neither of the two plaintiff companies could have or did acquire all or substantially all of the assets of its predecessor employer.

The primary purpose in construing statutes is to arrive at the legislative intent within the framework of the language used. While certain portions of the enactment on unemployment compensation may be shrouded in uncertainty and ambiguity, certainly there is nothing indefinite or uncertain about the words, *"If an employer has acquired all or substantially all the assets of another employer and such other employer had discontinued operations upon such acquisition,* the period of liability of both employers during such period shall be jointly considered for all purposes of this section." We need not restrict the meaning of this prase by assuming a narrow and rigid construction of the words. We accept them in their everyday usage and accord to the word "substantial" some degree of elasticity but in applying them to the facts of this case we conclude that neither of the created corporations acquired "all or substantially all" of the assets of the R. Verne McCullough Enterprises partnership. When a going business is carved roughly into quarters and three-fourths goes to one successor corporation and one-fourth to another, neither of the succeeding entities acquires substantially all of its predecessor's assets. Therefore, unless the legislature when it defined "employment unit" and "employer" intended to include a part or department of a going business or intended to embrace a unit which had no legal entity but which was operating isolated from other units owned, managed and controlled by the employer, plaintiffs must fail in their contention.

There would be merit to the contention of plaintiffs if

we looked only to the purposes and objectives of the statute and if we were not required to construe the various sections of the unemployment compensation act together. The first part of sub-section 42—2a—19, supra, which defines "employing unit" could be stretched to cover any integrated venture separately operated by an employer if it were not for the wording of the immediately following paragraph which provides that all employees performing services for an employing unit which maintains two or more separate establishments shall be deemed to be performing services for a single employing unit for all purposes of the act. The latter wording seems to announce clearly that in cases similar to the one herein involved, even though the various businesses be operated and located separately, the legislature intended that there be but one employer or employing unit regardless of the number of individual ventures. This construction is in keeping with a legislative intent to affix responsibility to a legal entity that is recognized at law or the entity which is ultimately liable for the obligations of the organization. In these particular cases, regardless of the method of operations adopted, the entity liable for the tax before the creation of the corporations was the partnership and thereafter the individual corporations. Prior to incorporation, each venture was only one outlet through which the partnership operated and disregarding the assumed names the employer was in fact the partnership.

In view of the number of states that have enacted similar unemployment compensation acts, there are jurisdictions which have construed similar enactments. Our present act is patterned after the New York act and the Supreme Court of that state in the case of *Matter of Hinzman & Waldmann, Inc.,* 274 App. Div. 1009, 85 N. Y. S. 2d 149, 150, interpreted Section 577 of the New York Act, Labor Law, McK. Consol. Laws, c. 31, which read as follows.

"If an employer has acquired all or substantially all the assets of another employer and such other employer has discontinued operations upon such acquisition, the period of liability of both employers during such period is jointly considered for all purposes of this section."

In that action, the co-partners were originally engaged in business as joiners and woodworkers. In addition to that venture, they became engaged in the business of repairing ships. Subsequently, they determined to incorporate their business and formed two corporations for that purpose. One of the corporations acquired the partnership assets carried on the partnership books as the woodworking venture. The portion of the business relating to the ship-repairing venture was transferred to the second corporation. The referee who originally heard the case, the Unemployment Insurance Appeal Board and the Supreme Court all held that by transferring the assets of the partnership to two corporations the provisions of the section requiring the transfer of all or substantially all of the assets of the employer had not been complied with and, therefore, neither of the succeeding corporations was entitled to the inheritance rate.

In the case of *Seavey Hardware Company* v. *Riley*, 95 N. H. 502, 67 A. 2d 430, 432, the Supreme Court of New Hampshire passed on a cause similar to the present litigation. There a partnership purchased a retail hardware business in Dover. Subsequently, the same partnership purchased another hardware store in a different city. The operations of each of the stores was continued by the partnership in the same manner as prior to the purchase. At a later date, the partnership sold the Dover store to an individual who subsequently transferred it to the party claiming the preferred inheritance rating. The contention was made in that case that each of the stores was an employing unit under the New Hampshire act and that the subsequent purchaser was entitled to a rating earned by the Dover store. The act of that state had substantially the same provisions as does the act of this state. There,

the court ruled against the plaintiff's contention in the following language:

"*The plaintiff's position is fallacious in stating that the Seavey Hardware Company was one employing unit and that the other was Young's Hardware Store. Employing unit is defined in terms of the individual or type of organization behind a trade or business rather than in terms of the physical units and the economic features of the enterprise.* In Sulloway v. Rolfe, supra, 94 N.H. 85, 87, 47, A.2d 109, the theory that an employing unit was the same because the organization of a certain law office was the same and it was fair to say that there was identity of enterprise and other business and economic factors, was rejected. It was held that since there was a change in the personnel of the partnership, the employing unit was new and that under the statute as it then was the new partnership was not entitled to the merit rating of its predecessor. So, in the present case, the contention that the Dover store was an employing unit cannot be accepted. The employing unit was the Fountain partnership, which also owned the store in Exeter. *It has sometimes been stated that the phrase 'employing unit' is defined in terms of the venturer rather than of the venture. By employing unit is meant the master rather than the servants, the owner rather than the business, the one ultimately liable for the obligations of the organization.*" (Emphasis added.)

In the case of *Cartersville Candlewick, Inc.,* v. *Huiet*, 204 Ga. 609, 50 S. E. 2d 647, the court held that where a partnership which was an employer under the employment compensation law maintained two separate establishments and subsequently organized a corporation which acquired the business and assets of one of such establishments but did not acquire substantially all of the assets of the partnership the succeeding corporation was not entitled to the benefit of the experience rating earned by the partnership.

There are some jurisdictions which might appear to sustain plaintiff's contentions. The Supreme Court of Michigan in *Meyer et al* v. *Michigan Unemployment Compensation Comm.,* 311 Mich. 440, 18 N. W. 2d 886, 887, construed the Michigan act. In that case, an individual who was transacting business under an assumed name formed a partnership with two other individuals who apparently were his wife and daughter. The partnership continued to operate the business in the same manner and place as

it was operated by the individual. The Michigan act provided: "It (wages) shall exclude all remuneration paid to an individual by an employing unit for personal services within any calendar year after such individual has been paid *by that employing unit* remuneration equal to $3,000.-00 for personal services within that year." Pub. Acts 1936, Ex. Sess. No. 1, § 44 (2), as amended by Pub. Acts 1941 No. 364. (Emphasis added.) The holding by that court was to the effect that even though the employer may have changed from an individual to a partnership the employing unit was the same and the subsequently organized partnership was entitled to claim credit for remuneration paid during the year by the individual.

In the case of *Karlson* v. *Murphy,* 387 Ill. 436, 56 N. E. 2d 839, the Illinois Supreme Court considered a similar statute. The question in the Illinois case was whether successive partnerships caused by death or resignations of some of the partners were a single employing unit within the contemplation of the Illinois statute. The critical words therein involved were "by that employing unit." S. H. A. ch. 48, § 218. The Illinois court treated the six successive partnerships as a single employer for the purpose of permitting the subsequent partnerships to claim credit for remuneration paid to an employee of all of the successive partnerships.

In the two latter cases, the question of inheritance rating was not in issue. But assuming without deciding that the quoted cases are in conflict, in view of the fact that the precise question of preferred rating was before the New York and New Hampshire courts we prefer to follow the construction adopted by them. That construction seems more in keeping with the express wording of our statute. Had the legislature intended to permit a merit rating to be inherited when only a portion of the employer's assets were transferred, it would not have pro-

vided the rating could only be inherited when substantially all the assets were transferred.

Moreover, to adopt a different construction would require that we give no force and effect to the wording, "and such *other* (former) employer had discontinued operations upon such acquisition." If we disregard the legal entities, then the Canada Dry venture must be considered one employing unit, both before and after the incorporation. Under those circumstances, there would be no change in the employing unit, there would be no *other* employer, and the business of the former employer would not be discontinued. This would result in the employer continuing in business and render the transfer of a premium rate unnecessary as the same employer need not be concerned with any rate except his own.

Holding as we do that each bowling palace and the Canada Dry bottling plant were separate establishments of a single employing unit and not individual employers prior to incorporation of the two plaintiff companies, other questions raised in this appeal are not material.

The judgment is affirmed.

PRATT, C. J., and WOLFE and McDONOUGH, JJ., concur.

WADE, Justice (dissenting).

While I can see that some of the wording of these statutes lends support to the conclusion reached by the prevailing opinion, I do not believe that the legislature intended to treat as one "employer" or "employing unit" two separate and distinct businesses, which are housed in different buildings, operated and managed by different personnel doing a different kind of business but which have as the only connecting tie between them the fact that they are owned by the same person, or group of persons. I think

that if the statutes are going to be consistent and blend into a common-sense system, we must give more emphasis to the objects and purposes of the statute and less to the wording thereof. Here there is no claim that there is any purpose of these statutes accomplished by the construction placed thereon in the prevailing opinion. As far as it is made to appear the state is collecting an additional contribution to this fund which is not necessary for the purposes thereof, merely because the same owners have changed from one partnership to two corporations, in their operation of two separate and distinct businesses. This I do not believe the legislature intended. I therefore dissent.