Scott L. THEURER, D.M.D., Employer No. 1–082690–1, Plaintiff,

v.

BOARD OF REVIEW, INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.

No. 20903.

Supreme Court of Utah.

Sept. 12, 1986.

Kevin E. Kane, Logan, for plaintiff.

K. Allan Zabel, Salt Lake City, for defendant.

STEWART, Justice:

Scott L. Theurer, D.M.D., appeals an order of the Industrial Commission, which held that Dr. Theurer had acquired all or substantially all the assets of Dr. Steven Larsen and, therefore, that the wage and benefit cost experience of both dentists must be considered jointly for purposes of determining Dr. Theurer's unemployment compensation payments under U.C.A., 1953, § 35–4–7(c)(1)(C) (Repl.Vol. 4B, 1974 ed., Supp.1985). We reverse.

Dr. Theurer began a dentistry practice in Logan in July, 1984, by acquiring the dental equipment for his business for $52,750 from Dr. Larsen, who discontinued his practice in Logan and moved out of state for additional schooling. Dr. Larsen retained various hand tools and other items worth approximately $4,000 and his accounts receivable worth approximately $41,206. Dr. Theurer leased the building which Dr. Larsen had occupied for his practice. Dr. Larsen remains the owner of the building, which is worth approximately $66,000. Dr. Theurer also leased equipment from Dr. Larsen which was valued at $10,000. At the time of the transfer, Dr. Larsen's assets were worth approximately $173,956. Dr. Theurer paid Dr. Larsen a total of $55,000.

The purchase price included not only the dental equipment, but also a letter of introduction which informed Dr. Larsen's patients that he was leaving the area and that he recommended Dr. Theurer. The purchase agreement contained a restrictive covenant that Dr. Larsen would not practice general dentistry within 25 miles for a period of five years. When Dr. Theurer took over the practice, Dr. Larsen had approximately 1,300 active patients. Dr. Theurer estimated that one hundred patients left in preference for a different dentist, 700 to 900 have continued to use his services, and 200 are of unknown status. Dr. Theurer has attracted approximately 300 additional new patients.

The Industrial Commission found that although Dr. Theurer had purchased only 30% of Dr. Larsen's assets, a preponderance of the evidence demonstrated that Dr. Theurer had purchased or leased approximately 75% of Dr. Larsen's practice by either purchase or lease agreement, *i.e.*, "the majority of assets needed for the continuation of a dental practice." The Commission bolstered that conclusion by reference to Dr. Larsen's letter of recommendation and his covenant not to compete. The Commission ruled that "Dr. Theurer *acquired* substantially all the assets of Dr. Larson's [sic] dental practice." (Emphasis by the Commission.)

I.

Under the Employment Security Act, U.C.A., 1953, § 35–4–1, *et seq.*, every employer must pay contributions to the Unemployment Compensation Fund. § 35–4–7; § 35–4–9 (Repl.Vol. 4B, 1974 ed., Supp. 1985). Except as provided by § 35–4–7(c), each employer's contribution to the fund is governed by § 35–4–7(b). Under subsection (b), each employer must pay contribu-

tions equal to a percentage of the wages paid by him during previous calendar years. New employers must pay contributions equal to a lesser percentage based on their previous wage history plus a percentage equal to the average benefit cost rate experienced by all employers in the new employer's industry.[1]

Subsection 35-4-7(c) is a long, complex section which sets out when the general contribution rule outlined in subsection (b) does not apply. Subpart 35-4-7(c)(1)(C) sets out when an employer who purchases all or part of the assets or business of another employer must make contributions to the unemployment compensation fund based in whole or in part on the previous employer's contribution rate rather than solely on the rate the successor employer would pay under subsection (b) as a new employer.[2]

In this case, Dr. Theurer had just graduated from dental school and was just starting his practice. Nevertheless, because he in substance took over Dr. Larsen's practice, the Commission applied ¶ 3 of subsection (c)(1)(C) and considered the "benefit costs" and payrolls of both Dr. Theurer and Dr. Larsen. Dr. Theurer was thus required to pay a higher percentage contri-

bution than he would have paid as a new employer under § 35-4-7(b).

The Commission's decision was based in part on its factual determination of the monetary value of the assets purchased or leased by Dr. Theurer as a percentage of the monetary value of the assets of Dr. Larsen's business. However, the Commission's decision was also heavily influenced by the fact that Dr. Theurer acquired virtually all the assets necessary to conduct Dr. Larsen's dentistry practice. Dr. Theurer practices dentistry in the same building, with most of the same equipment, and, as a result of the letter of introduction from Dr. Larsen, for most of the same patients. Further, Dr. Larsen had agreed not to practice general dentistry in the same area for five years. As a practical matter, Dr. Theurer had acquired substantially all the assets of Dr. Larsen's practice necessary to keep that practice a going concern. It is these aspects of the employer's business which tend to affect the likelihood that the business would generate unemployment claims. The facts that Dr. Larsen retained the accounts receivable and Dr. Theurer leased rather than purchased the office and some equipment are probably irrelevant to that tendency.

---

**1.** Section 35-4-7(b) states:

Each employer shall, except as provided in Subsection 35-4-7(c), pay contributions equal to 3% of wages paid by him during the calendar years occurring prior to January 1, 1983; 5% of wages as of January 1, 1983, but before January 1, 1985; and 8% of wages on or after January 1, 1985. A new employer shall pay contributions equal to 2.7% of wages paid by him during the calendar years prior to January 1, 1983; 4.5% of wages as of January 1, 1983, but before January 1, 1985; and an amount [not less than 1% nor more than 8%] equal to the average benefit cost rate experienced by employers of the major industry as defined by commission regulation to which the new employer belongs, on or after January 1, 1985....

§ 35-4-7(b) (Repl.Vol. 4B, 1974 ed., Supp.1985).

**2.** Paragraphs three and four of section 35-4-7(c)(1)(C) state:

[¶ 3] If an employer has acquired all or substantially all the assets of another employer and the other employer had discontinued operations upon the acquisition, the period of liability with respect to the filing of contribution reports, the payment of contributions,

after January 1, 1985, the benefit costs of both employers, and the payrolls of both employers during the qualifying period shall be jointly considered for the purpose of determining and establishing the acquiring party's qualifications for an experience rating classification. The transferring employer shall be divested of his payroll experience.

[¶ 4] When an employer or prospective employer has acquired an operating department, section, division, or any substantial portion of the business or assets of any employer which is clearly segregable and identifiable, the entire payroll experience, and benefit costs after January 1, 1985, of the transferring employer shall be divided between the transferring and acquiring employers in proportion to the payroll for the four preceding completed calendar quarters attributable to the operating assets conveyed and retained. The rate of the acquiring employer for the current contribution year shall be that rate which is assigned under regulations of the commission.

§ 35-4-7(c)(1)(C) (Repl.Vol. 4B, 1974 ed., Supp. 1985) (paragraph indications added).

The Commission argues that it should impose liability under § 35–4–7(c)(1)(C) when the buyer acquires substantially all the assets of the business necessary to carry on the principal business activity of the seller. Although that analysis would be an entirely reasonable way for the Industrial Commission to determine whether the wage and benefit cost experience of previous employers must be considered jointly with successor employers for purposes of determining the contribution rate for unemployment compensation of successor employers, it is not the method chosen by the Utah Legislature, and must therefore be rejected.

*Canada Dry Bottling Co. v. Industrial Commission,* 118 Utah 619, 223 P.2d 586 (1950), construed the predecessor to § 35–4–7, § 42–2A–7, 1947 Laws of Utah ch. 56. Subsection (c)(1)(C) of that section contains the language relevant to our decision in this case:

> If an employer has acquired all or substantially all the assets of another employer and such other employer had discontinued operations upon such acquisition, the period of liability of both employers during such period shall be jointly considered for all purposes of this section.

1947 Laws of Utah ch. 56; *see Canada Dry,* 118 Utah at 624, 223 P.2d at 589.

In *Canada Dry,* a family owned three bowling alleys and the Canada Dry Bottling Company. Each of the businesses had separate management and kept separate books and records. Profits from each of the businesses were distributed through an umbrella family partnership. In 1947, the family reorganized its business operations into two corporations, one of which ran the bowling alleys and the other of

which ran the bottling company. The stock of each new corporation was distributed to individual family members in proportion to the interest that each family member previously held in the umbrella partnership, and upon transfer of the assets of the partnership to the two corporations, the umbrella partnership was dissolved. *Id.* at 621–22, 223 P.2d at 588. The Industrial Commission found that the bowling alley corporation had acquired 75% of the assets of the partnership and the bottling company corporation had acquired 25% of the assets of the partnership. Therefore, neither of the corporations had acquired substantially all of the assets of the previous employer and both corporations were required to pay unemployment compensation contributions based on new business experience ratings rather than the experience rating of the previous partnership.

This Court affirmed. It noted that the word "substantial" accorded the Industrial Commission some degree of latitude in making determinations under that statute, but went on to hold that

> [w]hen a going business is carved roughly into quarters and three-fourths goes to one successor corporation and one-fourth to another, neither of the succeeding entities acquires substantially all of its predecessor's assets.

*Id.* at 626, 223 P.2d at 590. *See also Surgical Supply Center v. Industrial Commission,* 118 Utah 632, 223 P.2d 593 (1950).

The Court's holdings in *Canada Dry* and *Surgical Supply Center* have been effectively set aside by a series of amendments to § 35–4–7(c)(1)(C),[3] which have split the section into paragraphs, placed the above-quoted statutory language in the third

---

3. Even before the decision in *Canada Dry* had been handed down, the legislature had passed an amendment to subsection (c)(1)(C) that negated the effect of the Court's ruling. That amendment placed the "substantially all the assets" test in a second paragraph, and added a third paragraph containing the substance of the fourth paragraph of § 35–4–7(c)(1)(C). *See* 1949 Laws of Utah ch. 53, at 118; § 42–2a–7(c)(1)(C).

Section (c)(1)(C) has been the subject of repeated amendments thereafter. *See* 1951 Laws of Utah ch. 50, at 118; 1955 Laws of Utah ch. 60, at 105; 1957 Laws of Utah ch. 64, at 150; 1963 Laws of Utah ch. 52, at 283; 1976 Laws of Utah ch. 19, at 64; 1982 Laws of Utah ch. 78, at 323; 1983 Laws of Utah ch. 20, at 1665.

paragraph of that section, and added a fourth paragraph which states:

When an employer or prospective employer has acquired an operating department, section, division, or any substantial portion of the business or assets of any employer which is clearly segregable and identifiable, the entire payroll experience, and benefit costs after January 1, 1985, of the transferring employer shall be divided between the transferring and acquiring employers in proportion to the payroll for the four preceding completed calendar quarters attributable to the operating assets conveyed and retained....

§ 35-4-7(c)(1)(C) [¶ 4].

That paragraph changes the result in *Canada Dry* and *Surgical Supply Center* because the bowling alleys and the bottling company would both now qualify for an apportionment of the previous employer's rating.

The Industrial Commission, however, argues that the legislative addition of ¶ 4 affects the meaning of ¶ 3. Under ¶ 4, apportionment of a previous employer's rating is required when an employer has acquired "any substantial portion of the *business or assets* of any employer." (Emphasis added.) However, in this case the Commission imposed tax liability under ¶ 3, concluding that Dr. Theurer had "acquired all or substantially all of the *assets* of Dr. Larsen." (Emphasis added.) *See supra* note 2. It reached that conclusion even though Dr. Larsen retained $41,000 of accounts receivable and $4,000 worth of dental equipment.

In *Spangola v. State*, 237 Iowa 645, 23 N.W.2d 433 (1946), an employer purchased the assets of a partnership in receivership, but the trustee retained the accounts receivable. The Iowa Supreme Court held that since the accounts receivable constituted "assets" of the partnership, the employer had not acquired "substantially all of the assets" of the partnership business and was not entitled to the succeeding employer's contribution rate. The court said that the word "assets" could not be limited to "physical assets." 237 Iowa at 647, 23

N.W.2d at 433–34; Annot., 4 A.L.R.2d 721 (1949). *See also* Annot., 22 A.L.R.2d 673 (1952). Our research has not revealed a single case analyzing a statute like the one at issue in which the word "assets" did not encompass accounts receivable and similar assets not essential to the continued operation of business.

The Commission urges this Court to adopt the analysis of two cases, *Harris v. Egan*, 135 Conn. 102, 60 A.2d 922 (1948), and *Union-May-Stern Co. v. Industrial Commission*, 273 S.W.2d 766 (Mo.Ct.App. 1954). However, these cases construed different statutory language.

In *Harris v. Egan*, the Connecticut Supreme Court construed a statute much broader than the Utah statute. The Court held that although the succeeding employer had not purchased the accounts receivable, the succeeding employer had "acquire[d] substantially all of the assets, organization, trade *or* business of another employer...." *Harris*, 135 Conn. at 104, 60 A.2d at 923 (emphasis added). The Court concluded that the word "or" in the statute was used by the legislature to indicate alternative tests and that:

It must be conceded that from an accounting viewpoint the accounts receivable and the accounts payable constituted a part of Delaney's assets. However, they were of no particular value to the buyers in the continuation of the business. As we have pointed out, the act cannot be restricted to assets, and the test is: Did the plaintiffs acquire substantially all of the assets or business of Delaney? Upon the facts of the case, the administrator could decide that they did.

*Harris*, 135 Conn. at 107–108, 60 A.2d at 925.

*Union-May-Stern Co. v. Industrial Commission of Missouri*, 273 S.W.2d 766 (Mo.Ct.App.1954), also construed a broader statute. The Missouri Court of Appeals held that the buyer had acquired substantially all of the seller's retail furniture business, where the buyer acquired operating assets worth approximately $700,000, but

the seller retained its accounts receivable worth $1,800,000, insurance policies worth $200,000, stocks and bonds of other corporations worth $500,000, and over $200,000 in cash. The court rejected the plaintiff's argument that because the seller had retained such a large dollar volume of liquid assets, the buyer could not be subjected to successor employer treatment, stating:

> Such an argument is based upon the assumption that the words "assets" and "business" ... have the same meaning. If the Legislature had intended that the acquisition of "substantially all the assets" would be the guide as to when transfers of accounts should occur, it would have plainly so indicated by using such words. By eliminating in 1951 the phrase "acquires the organization, trade, or business, or all of the assets thereof" and substituting therefor the phrase, "acquired substantially all of the business", it is apparent that the Legislature no longer desired that such a phrase be used as the test. Under such circumstances, we do not think it can be reasonably argued that a transfer of account will occur only when there is an acquisition of substantially all the assets.

*Id.* at 769.

Thus, both *Harris v. Egan* and *Union-May-Stern Co.*, the cases relied upon by the Commission, carefully pointed out that the statutes at issue were not dependent upon the successor employer's purchasing substantially all of the assets.

Although the Legislature has significantly amended § 35–4–7(c)(1)(C) several times, and was presumably aware of the case law interpreting similar statutes in other jurisdictions, it chose to retain the "substantially all of the assets" test in ¶ 3. Were the case one of first impression, we might well agree with the Commission, but we see insufficient reason to depart from what appears to be the meaning most likely intended by the Legislature. *See S.R.G. Corp. v. Department of Revenue,* 365 So.2d 687, 689 (Fla.1978).

## II.

The Commission concluded that although Dr. Theurer had purchased only 30% of Dr. Larsen's assets, he had acquired 75% of Dr. Larsen's assets because he had leased Dr. Larsen's building. Although it is unclear from the Commission's findings exactly how the 75% figure was arrived at, we agree with the Commission that the word "acquire" in § 35–4–7(c)(1)(C) is broad enough to encompass acquisition through lease. That construction is consistent with the statutory purpose. If a building has a fee simple value of $66,000 and a 2–year lease of the entire building is worth $12,000, a succeeding employer who acquires a 2–year lease of the entire building to continue the business has acquired 100% of a $12,000 asset.

Finally, we note that the amendments to § 35–4–7(c)(1)(C) do not affect the ruling in *Canada Dry* that the Commission has some leeway in determining whether a succeeding employer has acquired "substantially all" the assets of the preceding employer. Nor do they affect the Court's conclusion that 75% of the assets is not "substantially all" of the assets. *See also James v. McCoy Manufacturing Co.,* 431 So.2d 1147, 1149 (Ala.1983) (65% is not "substantially all" as a matter of law); *Auclair Transportation, Inc. v. Riley,* 96 N.H. 1, 69 A.2d 861 (1949) ("substantially all" is not less than 90%). In sum, the Commission's basic finding that "Dr. Theurer acquired approximately 75% of Dr. Larsen's practice by either purchase or lease agreement" precludes successor liability under § 35–4–7(c)(1)(C) as a matter of law.

Reversed and remanded for further proceedings.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.