No. 12938

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

IN THE MATTER OF THE ESTATE OF
JAMES M. McCLELLAND, Deceased.

Appeal from: District Court of the Tenth Judicial District,
Honorable R. D. McPhillips, Judge presiding.

Counsel of Record:

For Appellant:

John L. Adams argued, Billings, Montana

For Respondent:

Donald E. Ronish argued, Lewistown, Montana
Leonard H. McKinney argued, Lewistown, Montana

Submitted: September 23, 1975

Decided: OCT 20 1975

Filed: OCT 20 1975

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a district court judgment finding that the appellant, Genie Driver, was not the common law wife of the deceased, James M. McClelland, and therefore, had no interest in his estate.

James M. McClelland died on October 3, 1972, and his mother filed a petition for letters of administration and was, on October 25, 1972, appointed as administratrix of deceased's estate. On about February 1, 1973, appellant, who designates herself as Genie Driver McClelland, filed a petition to determine heirship and for letters of administration, requesting that the previous letters issued to deceased's mother, be revoked.

Prior to his death, deceased was deeded an undivided one-fourth interest in real property in Fergus County, Montana. When he was 20 years old, he was married to Barbara Hanley McClelland and from this marriage, James Jonathan McClelland was born. This marriage ended in divorce in June, 1970, and James Jonathan Mc-Clelland is a respondent in this action.

In February , 1971, deceased and appellant met and they have lived together off and on until his death, a total of 19 months. Appellant claims that there existed a common law marriage between herself and deceased. She claims, therefore, that under section 91-1401, R.C.M. 1947, she has a priority to nominate an administrator, and the district court must appoint that person as an administrator.

At the hearing there was extensive evidence presented by both sides as to the existence or nonexistence of the common law marriage between appellant and deceased. The court, after reviewing the evidence, found in its conclusion of law:

> "Here, there is evidence of an initial illicit relationship between the decedent and Genie Driver, and the latter has, as a matter of law,

failed to sustain the burden that the unlawful relationship changed to a lawful one."

The district court further assessed court costs against appellant. Appellant then petitioned the district court to allow her to appeal in forma pauperis. The district court allowed appellant to file without costs, but would not allow her a transcript at public expense. From that judgment and later refusal to provide appellant with a transcript at the State's expense, appellant appeals.

The main issue before this Court is whether a comman law marriage existed between appellant and deceased.

In support of the marriage, appellant introduced an affidavit signed by appellant and deceased declaring that there existed between them a common law marriage, and which was presented to the Oregon Welfare Department in order to obtain assistance.

According to appellant's testimony, Robert LaRoche, an attorney for Legal Services in Poplar determined that deceased and appellant had a valid common law marriage when they came to him concerning a possible charge against them of illegal cohabitation.

James A. McCann, county attorney, Roosevelt County, testified that he talked with deceased several times and each time deceased referred to appellant as his wife; that appellant and deceased came to his office to seek some advice about possible charges of illegal cohabitation being filed against them and McCann testified that he inquired of each of them whether or not they were married, and stated that each of them answered in the affirmative. He further stated that he went through the requirements of a common law marriage to ascertain for himself whether or not they are indeed married by common law. He testified that he thought that they were married.

Appellant alleged that the undisputed testimony was that appellant and deceased lived as man and wife in the home of appellant's

mother in Fraser, Montana, in September, 1971.

Appellant also testified that Mr. Mauer, a social worker from Yellowstone County, who was in charge of appellant's case file, was told by appellant that they were married.

Appellant's probation officer, Joe Bock, testified that appellant advised him of her marriage to deceased and she even brought deceased to meet the probation officer.

When deceased was in the hospital appellant was allowed all the visiting privileges of a wife, and the doctors who committed deceased to Warm Springs State Hospital, placed on his certificate as to his marital status, "Married (Common law marriage)."

When appellant went to Warms Springs State Hospital to visit the deceased, she signed the motel register as "Mrs. James M. McClelland."

Warm Springs State Hospital records showed deceased to be married and listed appellant as his wife.

Steven Day once lived with appellant and deceased, and he testified that deceased introduced appellant to Steve as "his old lady" which Steve interpreted as meaning his wife.

Appellant asserts that all of the above testimony establishes a common law marriage between herself and deceased.

Respondents, however, claim that in light of all the above evidence, there is still no common law marriage established by appellant. Respondents argue that the only time deceased and appellant alleged that they were married was when it would be of benefit to them: in Oregon when they needed welfare; to the welfare people in Billings when she needed aid to dependent children; to the hospital when they wanted to visit; and to appellant's parole officer, so appellant would not get in trouble for living with deceased.

Respondents further point out that appellant testified the marriage took place "approximately around the 28th of March." But that is in conflict with the initial petition filed which indicated that the marriage arose in September, 1971, and the affidavit presented by appellant indicated the same.

Deceased's prison record when he started his two year's probation on June 2, 1971, reflected his marital status as divorced. The conveyances of life estate executed by deceased on September 22, 1971, reflected a single status. His mother was the beneficiary on his life insurance and his mother made all the funeral arrangements. In answer to questions by Tess Peck and Opal Rung, at deceased's grandmother's funeral on about May 15, 1971, deceased stated they were roommates and not married. On September 22, 1971, deceased told Opal Rung that he and appellant were going to get married and later on that occasion, appellant discussed such contemplated marriage with Opal while they were in the car outside the bank.

Deceased's letter to his mother dated March 22, 1972, indicated he needed money to marry appellant. Appellant was admitted to the hospital in Oregon under her maiden name, and was then processed through the criminal court in Oregon in June, 1972, under that name.

Appellant indicated that they intended to go through a marriage ceremony but never got around to it.

It is respondents' claim that the above facts disprove a common law marriage existed.

In order to establish a common law marriage the proponent must prove that the parties were capable of consenting to the marriage and there was a mutual and public assumption of the marital relation. The marriage must take place immediately and it cannot be created piecemeal. It comes instantly into being,

or it does not come at all; and its parties must enter upon a course of conduct to establish their repute as husband and wife. See: Miller v. Townsend Lbr. Co., 152 Mont. 210, 448 P.2d 148.

As we can see from the above summary of testimony, the facts establishing the common law marriage of appellant and deceased are conflicting. This Court has consistently held that where there is a conflict in the evidence, the findings of the trial court are presumed to be correct if supported by evidence most favorable to the prevailing party. See: City of Missoula v. Rose, 164 Mont. 90, 519 P.2d 146, 31 St.Rep. 191.

We find that the findings of the district court are supported by credible evidence.

Appellant brings three additional issues for review. The first is whether or not the court can assess appellant's costs in its judgment. This Court finds that section 91-4314, R.C.M. 1947, allows the district court in its discretion to assess costs in its judgment.

The next issue is whether the court properly denied appellant's request for a transcript at the county's expense. Rule 18, M.R.App.Civ.P. provides that an application can be made to the district court to appeal without paying fees and costs. The rule further states that the court shall state the reason for any denial. The reasons for denial in this case are not apparent from the file.

Subsection (b) of that Rule, however, provides that if the motion for leave to proceed on appeal in forma pauperis is denied by the district court, a motion for leave to proceed may be filed in this Court within 30 days after the entry of the order of denial. Appellant has not complied with this requirement of the law. Therefore, this Court will not entertain an objection by appellant as to the district court's denial of allowing her

a transcript without costs.

Finally appellant asserts that the judgment exceeds the issues involved at the trial of this matter. We find no merit to that argument.

The judgment of the district court is affirmed.

------------------------------------
Justice

We concur:

------------------------------------
Chief Justice

------------------------------------

------------------------------------

------------------------------------
Justices