**MOR, INC., Appellant (Employer below),**

v.

**Nicholas HAVERLOCK, Jr., Appellee (Employee-claimant below).**

No. 4790.

Supreme Court of Wyoming.

June 30, 1977.

Robert A. Burgess of Winter & Burgess, Casper, for appellant.

David G. Lewis of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellee.

V. Frank Mendicino, Atty. Gen., and Lawrence A. Bobbitt, III, Asst. Atty. Gen., Cheyenne, filed a brief of amicus curiae on behalf of the Worker's Compensation Div.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

This is an appeal in a worker's compensation case, wherein the appellee, Nicholas Haverlock, Jr., was disabled after suffering a coronary condition or myocardial infarction while in the employ of the appellant, Mor, Inc. The district court awarded compensation on favorable findings, pursuant to § 27–361(b), W.S.1957, C.1967, 1975 Cum. Supp. The appellant-employer contends that the findings of the trial court are not supported by a preponderance of the evidence. We will affirm the order of the trial court.

Appellee was a forty-nine-year-old man who had been employed by the appellant as a hod carrier for approximately eleven years. On May 25, 1976, appellee began work on a project which involved the construction of a furnace for Great Lakes Carbon Company, east of Casper, Wyoming. The furnace consisted of six levels or hearths, with the first level being some fifteen feet above the ground and the top level being some twenty-five feet above the ground. The appellee's duties consisted of mixing various grades of cement and carrying it or hoisting it to the masons. Prior to June 21, 1976, appellee mixed almost all of the cement for the project, but had at least four employees of the Great Lakes Carbon Company assigned to him to help carry the cement to the masons. The Great Lakes' employees also had a truck hoist which was used to lift firebrick and cement to the various levels of the furnace. During the project, between fifty and sixty buckets of cement were hoisted or hand-carried to the masons each day.

On the morning of June 21, 1976, Haverlock was in apparent good health prior to his arrival at 7 a. m. at work. This day was to be the last day on the project and his helpers were, therefore, not on the job. Because of this, the appellee was called upon to mix all the cement and carry it by himself up to the various levels. He had no helpers, as was normally the case, and the hoist was not used. Mr. Haverlock testified that he was not accustomed to doing this much lifting and carrying of the cement buckets. During the day, which ended about 4 p.m., appellee made eight or nine

trips to each of the various levels of the furnace carrying each time two fifty-pound buckets of cement. By the time for coffee break, about 10 a. m., appellee began to feel nauseous and experienced pain which radiated from his stomach to his neck and arms. He became sweaty and experienced chills. Appellee complained that he felt like a "Mack truck had run over me," but apparently continued working until the job was finished. After arriving home, appellee experienced further discomfort, and the next morning consulted his family physician, Dr. Krause, who told him that he had experienced a heart attack the previous day. Appellee subsequently was hospitalized and eventually underwent by-pass heart surgery.

At trial, Dr. Krause testified that, based upon the history related by appellee, the stress of this job was the chief cause of appellee's heart attack—although there could have been other contributing factors. On cross-examination, Dr. Krause again stated that job-related stress was the major factor in appellee's heart attack. The doctor further testified that the onset of the myocardial infarction—an occlusion of the blood vessels of the muscles to one area of the heart—would have commenced almost simultaneously with the pain and the symptoms experienced by appellee on June 21, 1976, and would have continued thereafter.

After taking the case under advisement, the trial court made the following pertinent findings:

"1. That the above-named Employee-claimant suffered a coronary condition or · myocardial infarction while in the employ of the Employer herein on June 21, 1976.

"2. That said myocardial infarction was the direct causal result of work performed by Employee-claimant for the Employer on that date brought on by causative exertion occurring during the actual period of employment by stress clearly unusual to, or abnormal for, the individual employee in that particular employment, and that the acute symp-

toms of the cardiac condition were clearly manifested thirty (30) minutes after the causative exertion."

On the basis of these findings, the court awarded judgment to appellee for all present and future medical costs, and decreed that appellee should receive temporary, total disability payments until released to return to work.

This is the first opportunity we have had to discuss the cardiac-condition provisions, originally enacted as part of the Occupational Disease Law, Session Laws of Wyoming, 1969, ch. 200, § 15 [repealed Session Laws of Wyoming, 1975, ch. 149, § 4] and now found in § 27–361(b), supra. This section now provides:

"(b) No benefits for employment related coronary conditions except those directly and solely caused by an injury are payable unless the employee establishes by competent medical authority that there is a direct causal connection between the condition under which the work was performed and the cardiac condition, *and then only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, the individual employee, in that particular employment,* and further that the acute symptoms of the cardiac condition are clearly manifested not later than thirty (30) minutes after the alleged causative exertion." [Emphasis supplied]

It is the appellant-employer's contention that the work which Mr. Haverlock was performing on June 21, 1976, was not "unusual to, or abnormal for" Mr. Haverlock in his employment as a hod carrier for the appellant. This contention raises a question only as to the legal causation of the appellee's cardiac condition—it does not challenge the lower court's finding of medical causation, nor does it challenge the finding that acute symptoms appeared within thirty minutes of the exertion in question.[1]

Wyoming has clearly adopted the unusual-exertion rule for coronary-condi-

---

1. For an excellent discussion of the difference between legal and medical causation in heart-

attack cases, see 1A Larson's Workmen's Compensation Law, § 38.83 (1973).

tion cases, even though the rule represents a minority position which has been severely criticized by some textwriters. See 1A Larson's Workmen's Compensation Law, §§ 38.20 and 38.61. Regardless of the wisdom of the rule, it must be applied to situations like that with which we are confronted here. We are also mindful that the worker's compensation law should be liberally construed where reasonably possible so that industry and not the individual worker should bear the burden of injuries suffered under its coverage. *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Boston,* Wyo., 445 P.2d 548, 551. We are, however, not free under the guise of liberal construction to extend the beneficial purposes of the compensation law to injuries that do not reasonably fall within the language employed by the legislature. *In re Hardison,* Wyo., 429 P.2d 320, 322; and *In re Trent,* 68 Wyo. 146, 231 P.2d 180, 188.

 Whether the exertion of work was clearly unusual to, or abnormal for, the individual worker in his particular employment is a question of fact to be determined by the trial court, and its findings will be upheld where supported by substantial competent evidence. See *Lentz v. City of Marion,* 222 Kan. 169, 563 P.2d 456, 460; and *Clayton v. Lease-Way Transportation Corp.,* Fla., 236 So.2d 765, 766. Cf. *Williams v. Northern Development Co.,* Wyo., 425 P.2d 594; *White v. Maverick Production Co.,* 63 Wyo. 452, 182 P.2d 818. It should be emphasized, however, that the exertion in question must only be unusual *to the employee*—it need not necessarily be unusual to others engaged in the same employment. *Herbert v. Sharp Brothers Contracting Co.,* Mo.App., 467 S.W.2d 105, 108. See also, *Commercial Transfer Company v. Quasny,* 245 Md. 572, 227 A.2d 20, 24. To sustain his burden of proof, as to legal causation, the statute requires that the employee show that the causative exertion was clearly something beyond his normal routine—something more than the worker's usual work.

The record in this case indicates that appellee's usual work consisted of mixing and carrying hod *with the assistance of helpers or a hoisting device.* On the day of his heart attack, appellee had no helpers, nor did he use a hoist. We find that this is sufficient evidence of unusual exertion, particularly when appellee was required to climb stairs continuously—which he testified was unusual to his normal routine. See *Reynolds v. Continental Can Company,* Del., 240 A.2d 135, 137.

The judgment of the trial court is affirmed.