**JIM'S WATER SERVICE, Appellant (Employer-Defendant below),**

v.

**Judith Marie EAYRS, on behalf of James Clinton Eayrs, Appellee (Employee-Plaintiff below).**

**No. 5037.**

Supreme Court of Wyoming.

March 6, 1979.

---

Francis E. Stevens, Gillette, for appellant.

Gordon W. Schukei, Newcastle, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.[*]

McCLINTOCK, Justice.

Jim's Water Service, employer, appeals from judgment of the district court of Weston County awarding death benefits to Judith Marie Eayrs and her three children. The claim had its basis in the death of James Clinton Eayrs. Employer contends that the death was not compensable under our Worker's Compensation statutes because of failure to prove a proper causal relation between the death and abnormal working conditions; that Judith is not entitled to benefits as a surviving spouse because no formal marriage existed between her and the decedent and no common-law marriage was proved; and that award of benefits to the children should have been denied since their dependency upon decedent was not shown. We shall affirm, reciting the facts as they become pertinent to the particular issue involved.

### The Cause of Death

The cause of the death was determined to be an occlusive coronary atherosclerosis. The employer contends that the evidence was insufficient to prove the required direct causal connection between the condition of the work and the death.[1]

On November 10, 1977 James was employed by Jim's Water Service, Inc. in Gillette. He started work the next day as a driver of a water truck which was employed hauling water to oil rigs in the area. His duties basically included the driving and some simple maintenance of the truck.

James worked long hours, sometimes driving up to 18 hours a day. Nine days after he started to work he was hauling water to a drilling rig in Weston County and his truck became stuck in a snowdrift. It was a cold day, with strong winds and deep, blowing snow. James walked about one mile through the snow to seek help, arriving at the residence of Jack Dowdy between nine and ten o'clock that morning. William Riehemann drove with him back to the scene in Riehemann's Jeep at about three o'clock in the afternoon but they had to walk two to three hundred yards through the snow to the truck. They then shoveled vigorously for about one-half hour. About four o'clock James climbed into the cab to drive while Riehemann was to push. The motor began to race, and when Riehemann went to the cab he found James slumped over the wheel. James stopped breathing very shortly afterward and was pronounced dead at 5:50 p. m.

The manager of the employer's Douglas division testified that long hours for such drivers were ordinary and normal. It was not unusual or abnormal for drivers to become stuck in the snow or mud or to lift fairly heavy objects. Each truck carried a shovel and chains and drivers were expected to attempt to free their trucks from difficulties. If they were unable to do so they were expected to use a high-frequency radio in the truck to call for help. James made no such call.

James D. Henry, M.D., a qualified pathologist, performed an autopsy upon the body and found the cause of death to be an occlusive coronary atherosclerosis. He

---

[*] At the time of oral argument Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5-1-106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

[1]. Section 27-12-603, W.S.1977 provides in pertinent part:

"(b) Benefits for employment-related coronary conditions except those directly and solely caused by an injury or disease are not payable unless the employee establishes by competent medical authority that there is a direct causal connection between the condition under which the work was performed and the cardiac condition, and then only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment, and further that the acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion."

found the heart to show existing marked occlusion of up to 90 per cent of all three major vessels. He declined to say that he could determine to a reasonable medical certainty that the stress caused or precipitated the death and stated that James could have died in his sleep just as easily as on the job. However, he also testified that the stress was a "contributing factor" and that the arrhythmia "very likely" and "probably" was due to the physical exertion and strain. That is sufficient evidence of the causal connection. The question that needs to be answered is whether the work effort contributed to a material degree to the precipitation, aggravation or acceleration of the existing disease and the resulting death. *Claim of Vondra*, Wyo., 448 P.2d 313 (1968); *Claim of Hill*, Wyo., 451 P.2d 794 (1969); *Claim of Brannan*, Wyo., 455 P.2d 241 (1969). See also, 1 Larson, Workmen's Compensation Law, § 12.20, p. 3–276. While it is not a compensation case, this quotation from *Rocky Mountain Trucking Company v. Taylor*, 79 Wyo. 461, 479, 335 P.2d 448, 453 (1959) is also pertinent:

> "A belief entertained by an expert is a positive opinion about which he is entitled to testify. His belief is not a statement of mere possibility unless the witness so qualifies it."

The required nexus between the exertion and stress and the resulting coronary occlusion was found by the trier of fact and is supported by substantial evidence.

The second aspect of this question, whether the exertion of James occurred during a period of stress unusual or abnormal to his working conditions, must also be answered in claimant's favor. The manager's testimony concerning decedent's duties and the driver's obligations when stuck does not completely answer the question. The best approach is first to ascertain the normal and usual task of the driver and then determine if the event in question exceeded that limit.

■ James was expected to haul water and to maintain his truck. In the event he became snowbound he was expected to use reasonable efforts to extricate himself. The trier of fact had sufficient substantial evidence to find the normal routine was exceeded when James acted to the degree he did and that the stress or exertion, while not different in kind, was greater in degree than normal. It appears from the evidence James was involved in an effort that consumed the entire day of November 20 and involved extensive and strenuous efforts. In *Mor, Inc. v. Haverlock*, Wyo., 566 P.2d 219 (1977) we found the burden satisfied when the causative exertion was clearly something beyond the worker's normal and usual routine. We will not disturb the determination of facts here.

### The Marital Relation of the Parties

In order for Judith to receive benefits under our law she must have been "legally married" to James. Section 27–12–408(a), W.S.1977.[2]

James and Judith were married in 1969 but divorced in 1974. For a while they maintained contact after their separation on a sporadic basis. James provided no support during these years because of inability to do so. In June of 1977 he returned to Kalispell and resumed living with Judith but they did not formally remarry. Judith was disabled and her only income was from disability benefits provided to her by the State. James worked periodically and pro-

**2.** This section as amended by Ch. 149, § 1, S.L. of Wyoming 1975 permits benefits to a "spouse to whom the employee was *legally married.*" Under the law prior to the 1975 amendment, § 27–49[II](d), W.S.1957, no benefits were permitted to a surviving spouse "unless he or she shall have been married to the workman by a marriage duly solemnized by legal ceremony at the time of the injury." Section 27–87, W.S. 1957 permitted benefits to a widow or invalid widower to whom the decedent "has been regu-larly married by a marriage duly solemnized by a legal ceremony." The constitutionality of the former statute was specifically left open in *Bowers v. Getter Trucking Company*, Wyo., 514 P.2d 837 (1973) and the cause remanded to the district court for a determination whether a valid common-law marriage had been effected in Texas. That determination has now been made and the case is again pending in this court.

vided such support as he could for her and the three children, although evidence is lacking as to the amount. They had no joint financial accounts or other joint property. His odd-job employment required him to leave Kalispell, and occasionally Montana, but he always maintained Judith and the children's residence as his own. The two shared expenses, care, work, and a home. They considered themselves man and wife and represented this to friends and the world. They were, in Judith's words, "still married; as far as God's law we had not been divorced."

The employer concedes that the residence of the parties and the marriage, if any, were in Montana and that the State of Montana still recognizes common-law marriage. Section 48–314, R.C.M.1975. He also concedes that under § 20–1–111, W.S. 1977 we must look to Montana as all marriages which are valid by the laws of that state are to be valid in Wyoming. *Hoagland v. Hoagland*, 27 Wyo. 178, 193 P. 843 (1920). If James and Judith were found to be validly married under the common law, she would therefore be entitled to benefits under our statute. The point of the employer's argument is that the facts here do not support the trial court's decision finding a valid common-law marriage and giving Judith her due.

As essential elements of such a marriage Montana requires mutual consent, assumption of a relationship by consent and agreement as of a certain time, cohabitation, and repute. *Welch v. All Persons*, 78 Mont. 370, 254 P. 179 (1927); *Elliott v. Industrial Accident Board*, 101 Mont. 246, 53 P.2d 451 (1936); *Miller v. Sutherland*, 131 Mont. 175, 309 P.2d 322 (1957). The burden to prove these elements is on the one asserting the validity of the marriage, and is satisfied by a preponderance of the evidence. However, there is a strong presumption in favor of the legality of a common-law marriage. *Welch v. All Persons*, supra; *In re Estate of Slavens*, 162 Mont. 123, 509 P.2d 293 (1973). The element of repute is a key term, and several cases where the Supreme Court reversed the finding turned on this issue. *Miller v. Townsend Lumber Co.*, 152 Mont.

210, 448 P.2d 148 (1968); *Estate of Slavens*, supra; *Matter of Estate of McClelland*, 168 Mont. 160, 541 P.2d 780 (1975). The cases make clear that repute means general community reputation, that is, did the parties consider themselves as married and so act as to all the world? It relates to the reputation, character and status of the relationship. *Welch v. All Persons*, 85 Mont. 114, 278 P. 110 (1929).

█ On the evidence presented here we have no choice but to affirm. The only evidence on the issue was given by Judith and it supports the marriage. Not all the formalities were followed, but repute, consent and cohabitation were all proven sufficiently by uncontradicted testimony and presumption of law.

Cases cited in *Bowers v. Getter Trucking Company*, Wyo., 514 P.2d 837 (1973) may have required a different result, but they were decided before the amendment of § 27–12–408(a), W.S.1977. The statute in effect at the time of *Bowers* required a surviving spouse to have been "regularly married by a marriage duly solemnized by a legal ceremony" before benefits could be given. Our new statute, enacted shortly after the rendition of this undefinitive opinion, requires only that the parties have been "legally married." We hold that a common-law marriage valid in the state in which contracted is valid in Wyoming for purposes of receipt of benefits under our Worker's Compensation laws. We find no error by the trial judge in finding Judith to be James' legal widow.

### The Dependency of the Children

█ Finally, we review the award of benefits the district court made to the children, as dependents of the deceased. Tina and Julie Johnson were children of Judith's previous marriage. Hallie Eayrs was the natural child of Judith and James' marriage in 1969. Although James never formally adopted Tina and Julie there is evidence of his support and concern. After the divorce all three children continued to live in Kalispell. The statute under which the award

must be based is § 27–12–102, W.S.1977, which is the definitional section. A "child" is to include "any individual," except a parent or spouse, who receives "substantially all" of his or her financial support from the employee before the injury or death and who is an unmarried minor or physically or mentally incapacitated. The statute defines a "dependent" as any individual, except the employee, who is entitled to benefits under the act. There are no Wyoming cases that further define or interpret these sections, hence we look to authority from other states and the language of the statute itself. The previous decisions from this court, *In re Dragoni*, 53 Wyo. 143, 79 P.2d 465 (1938); *In re Trent's Claim*, 68 Wyo. 146, 231 P.2d 180 (1951); *Smith v. National Tank Company*, Wyo., 350 P.2d 539 (1960); and *Heather v. Delta Drilling Co.*, Wyo., 533 P.2d 1211 (1975), reh. denied, were decided under the law prior to amendment and that law was more restrictive. Now, we see the test as whether the individual benefited was substantially dependent upon the worker. As it is presumed that an amendment is made with the intent to change the law and that the legislature knows the law to be changed, *De Herrera v. Herrera*, Wyo., 565 P.2d 479 (1977), reh. denied, we conclude that the definition of a child was intended by the legislature to make substantial dependency the test of eligibility and to eliminate the confusion and dispute existing before regarding stepchildren, adoption, legitimacy, lineage, and alienage. Whether any individual is substantially dependent upon another is a question of fact not to be disturbed by this court when substantial evidence exists to support that finding.

It is true that the claimants bear the burden of proving the essential elements of their claim and by the preponderance of the evidence to establish their entitlement to award. *Pease v. Pacific Power & Light Company*, Wyo., 453 P.2d 887 (1969); *Black Watch Farms v. Baldwin*, Wyo., 474 P.2d 297 (1970); *Gifford v. Cook-McCann Concrete, Inc.*, Wyo., 526 P.2d 1197 (1974), and the rule of liberal construction does not relieve the burden, *Olson v. Federal American Partners*, Wyo., 567 P.2d 710 (1977);

*Mor, Inc. v. Haverlock*, supra; *In re Hardison*, Wyo., 429 P.2d 320 (1967). However, the worker is entitled to a contrary presumption after the district court makes a finding that the evidence at the hearing is sufficient to sustain that burden, *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Schultz*, Wyo., 444 P.2d 313 (1968), and we will not disturb the determination of the trier of fact if it is supported by substantial evidence. *Olson v. Federal American Partners*, supra; *Williams v. Northern Development Co.*, Wyo., 425 P.2d 594 (1967); *Standard Oil Co. of Indiana v. Sullivan*, 33 Wyo. 223, 237 P. 253 (1925). If the evidence is conflicting this court will only consider that evidence favorable to the claimant, *Richard v. George Noland Drilling Company*, 79 Wyo. 124, 331 P.2d 836 (1958); *In re Corey*, 65 Wyo. 301, 200 P.2d 333 (1948), and give it every favorable inference that might be reasonably and fairly drawn from it.

We note that by use of the language in the amendment the legislature changed the rule of *Heather*, supra, where we found a presumption of dependency. It appears the legislature intends to define a dependent as a child and proof of substantial dependency is required before any award can be made to such person. We also note that use of the term "substantially all" falls somewhere between "total" and "partial" dependency as required by other laws. *Padilla v. Industrial Commission*, 113 Ariz. 104, 546 P.2d 1135 (1976), vac. 24 Ariz.App. 42, 535 P.2d 634 (1975); *De Mendoza v. Worker's Compensation Appeals Board*, 54 Cal.App.3d 820, 127 Cal.Rptr. 173 (1976); 2 Larson, Workmen's Compensation Law, §§ 63:12, 63:13, pp. 11–63—11–76.

Webster's Third New International Dictionary, 1971, defines "substantial" as "material," "that . . . of moment: important, essential." "All" is defined as "the whole amount or quantity." "Substantially" as used here is an adverb modifying the noun "all." The case law has not been helpful in the resolution of this question. In *Canada Dry Bottling Co. of Utah v. Board of Review*, 118 Utah 619, 223 P.2d

586, 22 A.L.R.2d 664 (1950) the Utah Supreme Court construed the phrase "all or substantially all" as contained in Utah's unemployment compensation law and noted that neither 25% nor 75% of the assets of a corporation comprised "substantially all" of the assets involved. Unfortunately, on the facts of this case a quantitative analysis of the financial support is impossible.

The only evidence on this issue was given by Judith. She testified that her only sources of income were from James and from her Social Security disability benefits in the sum of $177.80 monthly. She was not working. James was not working when he returned to Kalispell but had been employed in Gillette in June and July of that year. He had also worked for her brother-in-law. Her testimony conflicted for once she testified he only worked part time or periodically but that in June and July of 1977 he was working "at least" five or six days a week; "He worked a lot." At Jim's he was employed full time. He took the job to make more money and he promised to send most of it home when he was paid. He told her by letter that he "should have a good check to send you a week from Friday," but he died before he was paid. James, she testified, contributed financial support to her and the children, but never did she state in dollar figures how much he earned or contributed.

The evidence is far from overwhelming but the district court concluded that James did in fact provide substantially all of the financial support. The amount of Judith's disability benefits was not large and compared with that figure, James even working part time could have contributed substantially all of the support. The award provides us with no method to ascertain more, and with the rules of appeal in mind we must affirm.

We are mindful of the maxim that Worker's Compensation laws are to be interpreted and applied with reasonable liberality so that the purposes for which the law was enacted may be accomplished and where possible the industry and not the individual should bear the burdens of accidents suffered. *In re McConnell*, 45 Wyo. 289, 18 P.2d 629 (1933); *In re Gimlin*, Wyo., 403 P.2d 178 (1965); *Mor, Inc. v. Haverlock*, supra. These ideas formed the policy upon which the Worker's Compensation laws were based and comport with its history in this country and state. A History of American Law, L. M. Friedman, Simon & Schuster, 1973, New York, N. Y., pp. 587–588; Prosser, Torts, 4th Ed., 1971; § 80, pp. 530–531.

The judgment and order of award is affirmed.