694 P.2d 86 (1985)
Francis NUANES, Appellant (Employee-Claimant),
v.
STATE of Wyoming ex rel. WYOMING WORKER'S COMPENSATION DIVISION, Appellee (Objector-Defendant),
Lower & Co., Inc., (Employer-Defendant).
No. 84-88.
Supreme Court of Wyoming.
January 23, 1985.
*87 James A. Hardee, Douglas, for appellant.
A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Terry J. Harris, Asst. Atty. Gen., Cheyenne, for appellee.
Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.
ROONEY, Justice.
This is an appeal from an order of the district court denying the claim of appellant for benefits under the Wyoming Worker's Compensation Act. The issues raised by appellant are as follows:
"I. THAT THE TRIAL COURT ERRED IN DENYING THE CLAIM OF THE APPELLANT FOR THE REASON THAT THE TRIAL COURT'S FINDING THAT THERE WAS NO CAUSATIVE EXERTION IS UNSUPPORTED BY THE EVIDENCE AND IS ERRONEOUS AS A MATTER OF LAW.
"II. THE TRIAL COURT ERRED IN DENYING THE CLAIM OF THE APPELLANT IN THAT THE COURT'S *88 FINDING THAT THERE WAS NO `DIRECT CAUSAL CONNECTION BETWEEN THE WORK BEING PERFORMED AND THE CARDIAC ATTACK', IS UNSUPPORTED BY THE EVIDENCE."
Appellant had worked as a journeyman painter for the majority of his adult life. On July 21, 1983, appellant was employed, through his union, by appellee Lower and Co., Inc. at the Dave Johnson Power Plant at Glenrock, Wyoming. On April 18, 1983, after painting one wall of the office he had been assigned to paint, appellant found it necessary to move four filing cabinets away from another wall to paint it. Each cabinet weighed between 200 and 300 pounds. Approximately five minutes after moving the last cabinet, appellant experienced chest pains and difficulty in breathing. Because of his condition, it took appellant 45 minutes to cover a 600-foot distance to notify his supervisor. Thereafter appellant was taken for treatment, and the next day underwent arterial by-pass surgery. Appellant was diagnosed as having a 99% occlusion of the anterior descending artery and a 60% narrowing of the circumflex system. Three weeks prior to April 8, appellant had completed a physical which indicated no problems whatsoever, and appellant had experienced no prior symptoms.
Appellant submitted his claim for benefits under the Wyoming Worker's Compensation Act,[1] and the State of Wyoming ex rel. Wyoming Worker's Compensation Division objected. Lower and Co., Inc. later joined in this objection. The matter was tried to the court, which denied the claim of appellant for benefits, based on § 27-12-603(b), W.S. 1977, which reads as follows:
"(b) Benefits for employment-related coronary conditions except those directly and solely caused by an injury or disease are not payable unless the employee establishes by competent medical authority that there is a direct causal connection between the condition under which the work was performed and the cardiac condition, and then only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment, and further that the acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion."
Section 27-12-603(b), supra, outlines the criteria according to which an employee can receive compensation for a work-related coronary condition. In previous cases, we have recognized that § 27-12-603(b), supra, contains four basic requirements, to-wit:
"(1) The claimant must establish a period of employment stress unusual or abnormal for employees in claimant's occupations;
"(2) Claimant must show that he or she engaged in some exertion during the period of unusual or abnormal employment stress;
"(3) Claimant must establish by competent medical evidence a direct causal connection between such exertion and the myocardial infarction; and
"(4) Claimant must show that the acute symptoms of the cardiac difficulty were clearly manifested within four hours after the alleged causative exertion." Claim of McCarley, Wyo., 590 P.2d 1333, 1335-1336 (1979).
Specifically, the district court found that:
"* * * [T]he testimony does not indicate to the court that Mr. Nuanes was engaged in an activity during the actual period of employment unusual or abnormal to his employment. Mr. Nuanes did slide file cabinets away from the wall, they were heavy but and there is no testimony that the cabinets were heavier or more difficult to move than various types of furniture and fixtures, such as desks, which he routinely moved as a regular part of is [sic] employment." Opinion Letter of February 16, 1984.
In addition, the district court said in its Opinion Letter:

*89 "* * * [A]fter a careful reading of the Doctor's deposition I cannot find where he states specifically that the moving of the filing cabinets was the direct casual [sic] connection between the work being performed and the cardiac attack."
Thus, it found that two of the four statutory requirements were not met by appellant. Appellee State of Wyoming categorized these requirements as proof of legal causation and proof of medical causation.
We will first address appellant's second issue: whether there was a direct causal connection between the work being performed and the cardiac attack, or in other words, was the trial court correct in ruling that the evidence was insufficient to establish medical causation. We note here that on appeal we assume that the evidence in favor of the successful party is true, and leave out of consideration entirely the evidence presented by the appellant in conflict therewith, and we give the evidence of the successful party every reasonable inference that may be drawn therefrom. Distad v. Cubin, Wyo., 633 P.2d 167, 180 (1981); Brittain v. Booth, Wyo., 601 P.2d 532, 535 (1979). We also note that the burden of proof in a worker's compensation case rests with the employee to show the essential elements of his claim by a preponderance of the evidence. Jim's Water Service v. Eayrs, Wyo., 590 P.2d 1346, 1351 (1979).
We have dealt with the issue of medical causation before. In Claim of McCarley, supra, we denied compensation for a worker's coronary condition because the record was devoid of any medical testimony establishing the necessary causative link, and in fact the doctor's statements led to the conclusion that the employee suffered a heart attack as a result of exertion occurring off the job, and removed from any work-related stress.
In Jim's Water Service v. Eayrs, supra, 590 P.2d at 1349, we stated that:
"* * * The question that needs to be answered is whether the work effort contributed to a material degree to the precipitation, aggravation or acceleration of the existing disease and the resulting death. Claim of Vondra, Wyo., 448 P.2d 313 (1968); Claim of Hill, Wyo., 451 P.2d 794 (1969); Claim of Brannan, Wyo., 455 P.2d 241 (1969) * * *."
And, we upheld the award of compensation based on a doctor's testimony that the work-related stress was a "contributory factor" and that the arrhythmia "very likely" and "probably" was due to the physical exertion and strain of attempting to free his truck from a snow bank. In Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division v. Schwilke, Wyo., 649 P.2d 218 (1982), we held that medical testimony such as "most likely" and "contributed to" is of sufficient certainty to establish the required causative link.
Finally, in Kaan v. State ex rel. Wyoming Worker's Compensation Division, Wyo., 689 P.2d 1387, 1389 (1984), we concluded that:
"* * * The causal connection requirement is satisfied if a medical expert testifies that it is more probable than not that work exertion or stress contributed in a material degree to the precipitation, aggravation or acceleration of a myocardial infarction."
Applying those standards to the case at bar, it is clear that appellant did not meet his burden of proof on the issue of medical causation. Appellant's only medical expert, a cardiac surgeon, refused to say more than there "could have" been a causal connection between the moving of the filing cabinets and the attack, or that it is "certainly possible" that the effort precipitated, aggravated or accelerated the heart attack. He testified that:
"A. Okay. A myocardial infarction comes about, at least according to the best of our belief, as a result of an imbalance between supply and demand of the heart. If for some reason the blood supply to the heart is reduced, such as by an arthrosclerotic [sic] plaque, but excessive demands are made upon the heart, that can certainly precipitate an infarction.

*90 "Now, of course, if the person didn't have the pre-existing plaque, he could well sustain the amount of exertion required.
"Okay. But you know, to ask did exertion cause the heart attack, I don't think I am going to answer that yes or no. I will lay out the picture which we all have in our minds of a narrowed artery in a heart. And for some reason the patient exerts more than usual. Okay. And this is a strict supply-demand situation. Now, his supply of blood to that area is limited by the narrowing, but the demand on the muscle is more than the supply, and that's believed to be the way in which an infarction, death of muscle, can occur.
* * * * * *
"Q. In this particular instance given  I don't know how you want me to approach this. Hypothetically, let's assume that Mr. Nuanes was moving file cabinets and that type of thing. Is it possible or even probable that that type of activity would place this type of excess demand on that portion of the heart?
"A. It could have  first let me say that I don't know the particular 
"Q. I am saying hypothetically.
"A. I really don't know the circumstances under which he had immediate onset of pain.
"Q. Uh-huh.
"A. Yes, any type of exertion can increase the demand above the supply. Now, whether you call that demand excessive, what is excessive relative to the supply? I mean, I don't know what counts as an excessive exertion."
The doctor further testified:
"Q. Just as a point of clarification, and going back to our hypothetical, assuming that an individual was called upon to move file cabinets, and that onset occurred within ten to fifteen minutes after that. In your opinion is there a possibility or a degree of probability that that is the causative concept in patients with Mr. Nuanes' type of cardiac condition?
"A. Yes. If a person has pre-existing narrowing of his coronary arteries, then it's certainly possible that exertion can cause an excessive demand on the heart that cannot be met because of limitations in supply of blood to the heart."
This does no more than make the causal link a possibility. The district court was correct in holding that that is not enough.
Inasmuch as compensation under the Worker's Compensation Act was properly denied on this basis, we need not address the other issue raised by appellant.
Affirmed.
ROSE, Justice, dissenting.
The evidence presented by appellant Francis Nuanes is sufficient to establish both medical and legal causative exertion under the standards developed in our cases concerning employment-related cardiac attacks. Therefore, I would have reversed the order of the district court denying recovery under the Wyoming Worker's Compensation Act.
The trial court imposed a standard of proof with respect to medical causation, unsupported by our recent decisions. According to the judge's opinion letter, benefits would not be awarded absent an unqualified statement from the cardiac surgeon that the work effort had caused the attack:
"First, after a careful reading of the Doctor's deposition I cannot find where he states specifically that the moving of the filing cabinets was the direct casual [sic] connection between the work being performed and the cardiac attack."
We have said, however, that a medical expert can establish causation under § 27-12-603(b), W.S. 1977 (majority opinion at 88) with less degree of certainty than may be required in other cases. Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division v. Schwilke, Wyo., 649 P.2d 218, 222 (1982). In Jim's Water Service v. Eayrs, Wyo., 590 P.2d 1346, 1349 (1979), we said:

*91 "* * * [The pathologist] declined to say that he could determine to a reasonable medical certainty that the stress caused or precipitated the death and stated that James could have died in his sleep just as easily as on the job. However, he also testified that the stress was a `contributing factor' and that the arrhythmia `very likely' and `probably' was due to the physical exertion and strain. That is sufficient evidence of the causal connection."
From these and other cases we distilled the proper test of medical causation in Kaan v. State ex rel. Wyoming Worker's Compensation Division, Wyo., 689 P.2d 1387, 1389 (1984):
"* * * The causal connection requirement is satisfied if a medical expert testifies that it is more probable than not that work exertion or stress contributed in a material degree to the precipitation, aggravation, or acceleration of a myocardial infarction."
Since the trial court in the instant case analyzed the expert's testimony under an erroneous test of medical causation, our usual, deferential standard of review concerning factual matters is inappropriate. We have the duty under these circumstances to examine the deposition of the medical expert and reach our own conclusion concerning causation, based upon this substantial evidence in the record. Scott v. Fagan, Wyo., 684 P.2d 805, 811 (1984). Dr. Robert M. Ristroph, the cardiac surgeon who treated appellant, testified concerning the causal relationship between the work effort and the subsequent heart attack. Although no statement pinpoints appellant's moving of the file cabinets as the sole causative factor, the totality of the doctor's testimony establishes that the exertion contributed in a material degree to the precipitation of the attack.
Portions of the expert's responses to direct examination are set out in the majority opinion. This testimony describes the causes of myocardial infarctions, in general, and establishes that any type of exertion by atherosclerotic individuals can place excessive demands on the heart muscle. The quoted testimony also affirms the possibility or probability of a causative connection between the moving of file cabinets and the cardiac attack within 15 minutes.
On cross-examination, counsel inquired as to whether Mr. Nuanes, in light of his occluded arteries, was predisposed to a heart attack, the only question being when. Dr. Ristroph estimated the constant known risk of a heart attack to be 3% to 5% per year for someone such as Mr. Nuanes with a double vessel disease. He further testified that Mr. Nuanes' risk might be above the 3% to 5% figure, given the 99% narrowing of his anterior descending artery. The doctor then concluded:
"A. Now, I don't know whether I could say would he have had it if he had not been employed and hadn't moved this hypothetical file cabinet. That type of thing is really, you know, asking for the mind of God, you know."
The final session of cross-examination produced the following:
"Q. As I understood your answer to a question Mr. Harris just asked you, there really isn't any way to testify today within any reasonable medical certainty whether the exertion that this patient had was or was not the cause of his heart attack, is that correct, from your standpoint, from your own knowledge of what you know about it?
"A. The exertion  I mean, it is general medical knowledge that exertion can produce a heart attack given that the person already has narrowing of his coronary arteries. Whether it's fair to say that the exertion causes the heart attack, is not clear to me. All right. Because the same exertion with someone without the narrowing of the coronary arteries, would obviously not cause a heart attack."
In sum, the doctor testified repeatedly that an infarction can occur when a person with atherosclerotic arteries exerts more than usual, thereby placing an excessive demand on the heart muscle. He confirmed the possibility or probability of a *92 causal connection between the moving of the file cabinets and Mr. Nuanes' attack 15 minutes later. When asked specifically whether that exertion was or was not the cause of the heart attack, Dr. Ristroph answered:
"* * * [I]t is general medical knowledge that exertion can produce a heart attack given that the person already has narrowing of his coronary arteries."
Dr. Ristroph's complete testimony establishes that Mr. Nuanes' work effort contributed in a material degree to the precipitation of the heart attack. The majority, perhaps as a result of some of the language in our earlier cases, focus on select phrases in this testimony and conclude that it establishes no more than a possible causal link between the exertion and the attack. In my view, however, the expert's meaning should be gleaned from the totality of the information produced during direct and cross-examination. Considered in this manner, the evidence is sufficient to satisfy the requirement of medical causation under our worker's compensation statutes.
In addition to medical causation, the trial court based its holding on an absence of sufficient evidence to establish legal causation. That is, the court found no indication that the moving of heavy file cabinets by Mr. Nuanes constituted the unusual or abnormal stress required by § 27-12-603(b), supra.
We first delineated the proper rule for proof of unusual or abnormal exertion in Mor, Inc. v. Haverlock, Wyo., 566 P.2d 219, 222 (1977):
"* * * [T]he exertion in question must only be unusual to the employee  it need not necessarily be unusual to others engaged in the same employment. [Citations.] To sustain his burden of proof, as to legal causation, the statute requires that the employee show that the causative exertion was clearly something beyond his normal routine  something more than the worker's usual work."
We reaffirmed the validity of this rule in Jim's Water Service v. Eayrs, supra, 590 P.2d at 1349; Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division v. Schwilke, supra, 649 P.2d at 221; Yost v. Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division, Wyo., 654 P.2d 137 (1982); and Creek v. Town of Hulett, Wyo., 657 P.2d 353 (1983). We said in Jim's Water Service v. Eayrs, supra, that the test is satisfied when the exertion, although not different in kind from the employee's regular work, is greater in degree than normal.
When judged against this standard, the evidence in the present case supports only a finding that the moving of loaded file cabinets amounted to an unusual exertion for Mr. Nuanes. The uncontradicted testimony of appellant establishes that he typically moved furniture and equipment with the help of an apprentice or a laborer. He said that as a journeyman painter he was entitled to an apprentice to assist in the preparation of rooms for painting. He testified that the inadequate number of available laborers at the time of his heart attack necessitated his moving office furniture unassisted. A superintendent for the employer, the only other person to testify at trial, said that appellant was to contact him when helpers were needed to move furniture.
We faced an almost identical situation in Mor, Inc. v. Haverlock, supra. There the employee usually carried cement with the assistance of helpers or a hoisting device. On the day of his heart attack, he had no helpers, nor did he use a hoist. We held this evidence sufficient to establish unusual exertion.
The record in the present case establishes that appellant typically moved heavy objects with the aid of an apprentice or laborer. Prior to his heart attack, he moved four filing cabinets, each weighing 200 to 300 pounds, without help. This activity amounted to unusual exertion under § 27-12-603(b) and our prior cases.
The evidence of Mr. Nuanes' exertion on the day of his heart attack and the expert medical testimony concerning causation, when measured against the proper standards, establish appellant's entitlement to *93 worker's compensation benefits. I would have reversed the order of the district court.
NOTES
[1] Sections 27-12-101 through XX-XX-XXX, W.S. 1977.