FILED

04/22/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0125

DA 24-0125

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 78

IN THE MATTER OF THE ESTATE OF

ESTEL NEVEN ZUGG,

     Deceased.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
In and For the County of Sheridan, Cause No. DP-2021-42
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Michael Klinkhammer, Klinkhammer Law Offices, Kalispell, Montana

     For Appellee:

          Marcel A. Quinn, Thomas A. Hollo, Hammer, Quinn & Shaw, PLLC, Kalispell, Montana

Submitted on Briefs:  February 12, 2025

Decided:  April 22, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Donna Katherine Finley appeals the Fifteenth Judicial District Court's order denying her petition to open formal intestacy proceedings in the estate of Estel Neven Zugg and to appoint her as personal representative of the estate as his common law wife. The District Court denied Katherine's request to recognize a common law marriage. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Estel Neven Zugg (Neven) died in January 2021. In September 2021, Donna Katherine Finley (Katherine) filed a petition requesting that the District Court hold a hearing on Neven's estate. She asked the court to rule that Neven died intestate, to determine his heirs, and to appoint her as the estate's personal representative. Katherine alleged that she was married to Neven by common law when he died. Counsel for Austin and Kolby Zugg, Neven's sons, filed notices of appearance and participated in the proceedings.

¶3 The court held a bench trial in August 2022. Katherine testified that she and Neven met in 2014 and considered themselves married starting in 2016. Katherine testified that the couple lived between Williston, North Dakota, and Quartzite, Arizona, during their relationship. Their place in Arizona was a winter home where the couple spent three months at a time. Katherine said that she and Neven lived temporarily in North Dakota; she also stated that they lived there for the last four years of their relationship and "it was just a place to stay all the time." Katherine summarized: "[W]e didn't reside anywhere[;] we went here, we went there[.] We stayed and we traveled[.] Williston was a place to rest,

2

get back and go again." Katherine confirmed at trial that, although the couple occasionally stayed in Billings and Plentywood for a couple of weeks at a time, they never lived in the state.

¶4 Neven's friends and family testified that he had longtime ties to Plentywood and owned various properties in that area. There was differing testimony among them about whether Neven held Katherine out to be his wife. But none testified that they knew Katherine and Neven to live together in Montana during their relationship. Sandra Jacobsen, who went to grade school with Neven and has lived in Plentywood since 1980, said that Neven and Katherine never lived in Plentywood together. Neven, to Jacobsen's knowledge, had not lived anywhere in Montana after he met Katherine in 2014. Frank Soria, Neven's neighbor in North Dakota, testified that Neven and Katherine lived together in North Dakota. Rick Darvis, Neven's personal friend and accountant for forty years, also testified that Neven and Katherine lived in North Dakota. Jessie Frickle, Neven's friend who managed and dealt cards at the casino where he gambled, said that Neven lived in North Dakota during his relationship with Katherine. Neven's brother, Ed, agreed that Neven lived on their mother's property in North Dakota and went down to Arizona annually when work on the oil field slowed down. Neven's son, Austin, confirmed that his dad lived in North Dakota from 2014 until his death; Austin did not know Katherine to ever live in Montana.

¶5 In its written findings of fact and conclusions of law, the District Court acknowledged that Neven always maintained his connections to Sheridan County,

3

Montana, including keeping a Montana license plate, driver's license, and phone number. The court concluded nonetheless that the parties lived primarily in Arizona and North Dakota—states that do not recognize common law marriage—and their activities in Montana did not establish a common law marriage. Katherine appeals the order denying her petition and rejecting the argument that she and Neven were common law married.

## STANDARDS OF REVIEW

¶6 We review a district court's findings of fact to determine whether they are clearly erroneous. *In re Est. of Hunsaker*, 1998 MT 279, ¶ 25, 291 Mont. 412, 968 P.2d 281 (citation omitted). Findings of fact are clearly erroneous if "not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is left with a definite and firm conviction that a mistake has been made." *Est. of Hunsaker*, ¶ 26 (citations omitted).

¶7 On appeal from a bench trial, "[w]e view the evidence in the light most favorable to the prevailing party." *Kulstad v. Maniaci*, 2009 MT 326, ¶ 52, 352 Mont. 513, 220 P.3d 595 (citation omitted). "The trial court determines the credibility of witnesses and the weight assigned to their respective testimony." *Kulstad*, ¶ 52 (citation omitted). "We do not consider whether evidence supports findings that are different from those made by the district court. We confine our review to the determination of whether substantial credible evidence supports the findings actually made by the district court." *Kulstad*, ¶ 52 (citation omitted). "We will not second guess the district court's determination regarding the

4

strength and weight of conflicting testimony." *Double AA Corp. v. Newland & Co.*, 273 Mont. 486, 494, 905 P.2d 138, 142 (1995) (citation omitted).

## DISCUSSION

¶8 Montana considers it a rebuttable presumption that "[a] man and a woman deporting themselves as husband and wife have entered into a lawful contract of marriage." Section 26-1-602(30), MCA; *In re Marriage of Swanner-Renner*, 2009 MT 186, ¶ 16, 351 Mont. 62, 209 P.3d 238 (citation omitted). This presumption is "one of the strongest known to the law," which favors a finding of matrimony. *Marriage of Swanner-Renner*, ¶ 16 (quoting *In re Est. of Murnion*, 212 Mont. 107, 113, 686 P.2d 893, 897 (1984)).

¶9 "The party seeking to establish a common law marriage in Montana must show that the parties were competent to enter marriage; that there was assumption of a marital relationship by mutual consent and agreement; that they cohabited; and that they acquired the reputation, character and status of marriage in public." *Marriage of Swanner-Renner*, ¶ 17 (citations omitted). "The parties must 'enter upon a course of conduct to establish their repute as husband and wife.'" *Marriage of Swanner-Renner*, ¶ 17 (quoting *In re Est. of McClelland*, 168 Mont. 160, 165, 541 P.2d 780, 783 (1975)).

¶10 Katherine argues that the District Court erred because the record indisputably establishes Neven lived in Montana and considered Katherine to be his wife. She maintains that the District Court misapprehended the evidence, relying on the lack of documentation such as joint tax returns or bank accounts and ignoring the weight of evidence that she and Neven had assumed a marital relationship by mutual consent. Katherine points to Rick

5

Darvis's testimony that Neven filed taxes in Montana in 2019 and highlights other testimony indicating that Neven lived in Montana, including Scotty Fain's statement that Neven would stay with his mother in North Dakota but "would go back to Montana most of the time." Katherine also contends that she and Neven lived in Billings and "had lived several weeks in Roundup."

¶11 Austin argues that Katherine and Neven's relationship took place predominantly in Arizona and North Dakota—states that do not recognize common law marriage unless they are "entered into in another state in which they are authorized." *Barnett v. Jedynak*, 219 Ariz. 550, ¶ 12, 200 P.3d 1047 (Ct. App. 2009) (citation omitted); *accord Pearson v. Pearson*, 2000 ND 20, ¶ 8, 606 N.W.2d 128 (citation omitted). Austin asserts that "if a couple meets all of Montana's common law marriage requirements but does so while living in a state that does not recognize common law marriage, their relationship does not ripen into a valid marriage until they live together in Montana." In support of this proposition, Austin cites *In re Marriage of Swanner-Renner*, where the parties manifested their consent to a common law marriage when they lived in Washington and then moved to Montana. *Marriage of Swanner-Renner*, ¶ 20. Applying our holding from *Estate of Murnion*, 212 Mont. at 117-118, 686 P.2d at 899, we wrote that "once the impediment of Washington law was removed by the parties' relocation to Montana, the relationship ripened into a valid marriage under Montana law." *Marriage of Swanner-Renner*, ¶ 20. Because "[t]here is no evidence [Katherine] ever lived, worked, or did anything in Montana besides visit it,"

6

Austin argues that Neven and Katherine were not common law married under Montana law. *Marriage of Swanner-Renner*, ¶ 20.

¶12    Under Montana law, a marriage that is "invalid where contracted" but would be valid in Montana "will be recognized by this State as valid if the marriage otherwise comports with our marriage laws, and if under choice of law rules, Montana law is to be applied." *Est. of Murnion*, 212 Mont. at 118, 686 P.2d at 899. Because the factors of "cohabitation and public repute of the marriage . . . do not take place instantly, but are continuing factors that extend through the life of the marriage[,]" a relationship commenced in a state that does not recognize common law marriages will become a valid marriage under Montana law upon domicile in this State. *Est. of Murnion*, 212 Mont. at 118-19, 686 P.2d at 899-900 ("The requirement for certainty of time for the beginning of the common-law marriage was met when the parties moved to Montana, a state where common-law marriages are valid, and where thereafter they cohabited, and by public repute were husband and wife.") (citation omitted). *See also Marriage of Swanner-Renner*, ¶ 20 (relying on *Estate of Murnion* to conclude that "once the impediment of Washington law was removed by the parties' relocation to Montana, the relationship ripened into a valid marriage under Montana law") (also citing § 40-1-401(2), MCA, providing that when the parties to a prohibited marriage continue to cohabit after removal of the impediment, there is a lawful marriage).

¶13    Austin therefore is correct that a relationship begun in a state that does not recognize marriages by common law must ripen by residency in Montana to become a valid common

law marriage under Montana law.  Katherine did not offer evidence that she and Neven began their relationship in Montana.  She testified that they met over the phone while she was living in North Carolina, and they met in person for the first time in Las Vegas, where they began their common-law marriage in 2016.[1]  Although Katherine testified that the couple stayed in Billings and Roundup for a couple of weeks at a time, the remaining witnesses who spoke to the issue agreed that Neven and Katherine never lived in Montana.  Katherine confirmed during this colloquy that she and Neven did not live in Montana:

> Q: Can you list a single address in Plentywood [where] you ever lived with Neven?
> A: No, we traveled, we traveled.
> Q: Is it fair to say that you never lived with Neven in Montana? You may have traveled through and visited people?
> A: Right, that is fair.
> Q: You never lived here?
> A: Right.

¶14     The District Court relied on substantial credible evidence to find that the couple never lived together in Montana.  *Kulstad*, ¶ 52 (citation omitted).  Katherine does not argue that the District Court's findings of fact on this point were clearly erroneous.  *Est. of Hunsaker*, ¶ 25 (citations omitted).  Without having lived in the state, Katherine cannot establish that she and Neven entered into a valid common law marriage under Montana law.  *Marriage of Swanner-Renner*, ¶ 20; *Est. of Murnion*, 212 Mont. at 119, 686 P.2d at 899-900.  That the couple never lived together in Montana is determinative for this appeal—we therefore do not consider Katherine's further argument that she and Neven

---

[1] Nevada does not recognize common law marriage. Nev. Rev. Stat. 122.010.  *Hay v. Hay*, 678 P.2d 672, 674 (Nev. 1984).

satisfied the remaining common law marriage requirements. The District Court did not err when it ruled that Katherine and Neven were not common law married and denied Katherine's petition.

## CONCLUSION

¶15 The District Court's order is affirmed.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON